UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re,<br><br>20 BAYARD VIEWS, LLC,<br><br>Debtor. | Chapter 11<br><br>Case No. 09-50723 (ESS) |

## STIPULATION AND AGREED ORDER
## AUTHORIZING USE OF CASH COLLATERAL

Upon the Application (the "Motion")[1] of 20 Bayard Views, LLC, the debtor and debtor in possession in the above-captioned cases (the "Debtor"), by its proposed counsel Porzio, Bromberg & Newman, P.C. and Moritt Hock Hamroff & Horowitz LLP, seeking entry of an Interim Order authorizing the Debtor, pursuant to sections 105, 361 and 363 of title 11 of the United States Code (the "Bankruptcy Code"), to utilize cash collateral ("Cash Collateral"), on an interim basis pending a final hearing and following the final hearing, a final order permitting the use of cash collateral on a final basis; and a hearing having been held on December 18, 2009 (the "Interim Hearing") to consider the entry of an interim order authorizing the use of Cash Collateral through and including January 12, 2010 (the "Interim Period"), pending a subsequent hearing to be held prior to the expiration of the Interim Period, to consider use of Cash Collateral on a final basis and pending the entry of an order approving the Debtor's use of Cash Collateral on a final basis; and upon the terms and conditions set forth on the record at the Interim Hearing, the Court authorized the Debtor, with the consent of W Financial Fund, LP ("WFF"), to use Cash Collateral to make payments to (i) JBM Estates LLC ("JBM") for $2,650.00, (ii) Bayard Views Condominium Association (the "Condo Association") for $32,0000.00, and (iii) WFF for

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the Motion.

$62,5000.00 (collectively, "Interim Period Payments"); and the Debtor having made the Interim Period Payments; and the Debtor and WFF having discussed the continued use of Cash Collateral from the expiration of the Interim Period to February 23, 2010 (the "Second Interim Period"); and the parties having agreed to the Debtor's use of Cash Collateral during the Second Interim Period on the terms and conditions set forth herein; and after due deliberation, and sufficient cause appearing therefor; and the Debtor having asserted for the purposes of this Order that:[2]

A.      On December 4, 2009 (the "Petition Date"), the Debtor commenced a case under chapter 11 of the Bankruptcy Code. Pursuant to sections 1107 and 1108 of the Bankruptcy Code, the Debtor remains in possession of its assets and continue to operate its business as a debtor in possession.

B.      The Debtor's principal asset consists of 37 unsold condominium units and 40 parking spaces located at the Bayard Condominium Complex (the "Units"), together with the related rents and leases (the "Rents," and collectively with the Units, the "Prepetition Collateral"). The Debtor's income is derived principally from the Rents.

C.      Prior to the Petition Date, in October 2008, WFF provided the Debtor a one-year bridge loan in the aggregate principal amount of $17,400,000 (the "WFF Loan"), as memorialized in that certain Consolidated, Amended and Restated Note (the "Note"). In connection with the WFF Loan, the Debtor and WFF entered into that certain Agreement of Consolidation, Extension and Modification of Mortgage (the "Mortgage," and together with the Note and other related documents, the "Loan Documents"). The Note is secured by the Prepetition Collateral.

---

[2] Nothing asserted herein shall be used to prejudice or estop any party from subsequently contesting any of the factual assertions for any purpose.

D.      As of December 16, 2009, the Debtor owes WFF principal in the amount of $16,975,072, interest at the original contract rate of 12% totaling $186,725.79 (33 days from November 1, 2009 to December 3, 2009), a late fee for November of $10,574.55, default interest of 24% totaling $147,117.23 (13 days from December 4, 2009 to December 16, 2009), and legal fees (collectively, the "Obligations").

E.      The continued operation and maintenance of the Units is in the best interest of the Debtor, its estate and WFF, and is consistent with the Debtor's obligations as a debtor in possession and helps to protect WFF's secured position.

F.      The Debtor has requested the use of Cash Collateral during the Second Interim Period as more fully set forth herein to pay necessary maintenance costs, including the Debtor's monthly management fee to JBM and the monthly common charges to the Condo Association during the course of the Debtor's chapter 11 case. In the Motion, the Debtor also seeks to use Cash Collateral to pay the expenses for the administration of the Debtor's bankruptcy case, including the fees of the Debtor's professionals. For the avoidance of doubt, WFF does not consent to the use of Cash Collateral to pay the fees of the Debtor's professionals. Accordingly, nothing in this Order or any aspect of the relief granted to the Debtor pursuant hereto is intended to constitute, nor shall it be deemed to be, a concession or acknowledgment by WFF in any respect as WFF's consent to or the propriety of the use of Cash Collateral for the payment of professional fees.

G.      As evidenced by the affidavit of service filed on the docket in the Debtor's chapter 11 case, the Debtor gave notice of the Motion and Interim Hearing to (i) the Debtor's twenty (20) largest unsecured creditors, (ii) all known secured creditors of the Debtor, including WFF, (iii) the United States Trustee, and (iv) all parties that have filed notices of appearance

1333801

(collectively, the "Notice Parties") by facsimile, email, or regular mail on December 11, 2009, and such notice represents sufficient and adequate notice of such hearing pursuant to Bankruptcy Rules 4001 and 9014 and no further notice of, or hearing on, the relief sought in the Motion is necessary or required.

H.    The Debtor reserves all rights and claims against WFF for any purpose, including how the post-petition payments to WFF from the Debtor should be applied to the Obligations. WFF reserves any and all rights to contest, oppose, or otherwise defend against the assertion of any such rights by the Debtor and/or any other party to which any such rights may be assigned or otherwise transferred.

I.    Consideration of the Motion constitutes a "core proceeding" as defined in 28 U.S.C. §§157(b)(2)(A), (K), (M) and (O).

J.    This Court has jurisdiction over this proceeding, the parties and the property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334.

K.    WFF has consented to the Debtor's use of certain Cash Collateral for the Second Interim Period on the express terms and conditions set forth in this Order, which have been negotiated in good faith and at arm's length. The terms of such use of Cash Collateral and the adequate protection arrangements authorized hereunder are fair and reasonable under the circumstances and reflect the Debtor's exercise of prudent business judgment.

L.    The Debtor has requested entry of this order pursuant to Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). The Court concludes that entry of this Order is in the best interests of the Debtor and its estate and creditors as its implementation will, among other things, allow for the continued operation of the Debtor's existing business.

**NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED, AS FOLLOWS:**[3]

1.      The Debtor is hereby authorized to use Cash Collateral on the terms herein on an interim basis through February 23, 2010, which period may be extended by written consent of WFF in its sole and absolute discretion or by other order of the Court. The Debtor is hereby authorized and directed to establish, maintain and utilize a segregated account with respect to the Cash Collateral.

2.      The Debtor is hereby authorized to use Cash Collateral on an interim basis to pay the monthly charges due JBM ($2650.00) and the Condo Association ($32,000.00), provided, that the Debtor shall pay to WFF, no later than January 22, 2010, the balance of the Rents received by the Debtor in January after payment to JBM and the Condo Association; further provided, that any Cash Collateral from the Interim Period in excess of the amounts to be paid to JBM and the Condo Association and as required to be paid to WFF as was agreed at the Initial Hearing is to be retained by the Debtor in the segregated account maintained therefore pursuant to Paragraph 1, and shall not be transferred to non-Debtor entities.

3.      WFF's consent to the Debtor's use of Cash Collateral is conditioned upon: (1) no later than January 22, 2010, the Debtor providing WFF with (i) current rent rolls and leases, and schedule of arrearages, if any, (ii) list of tenant security deposits, if any, (iii) updated financials of the Debtor, (iv) back up information for the unsecured claims listed for the Debtor's top 20 unsecured creditor list and (v) bank statements evidencing the deposit of the Debtor's rental income and tenant security deposits; (2) on a date mutually agreeable and as soon as practicable, the Debtor will be available for WFF to review the Debtor's books and records; (3) on a date

---

[3] Nothing asserted herein shall be used to prejudice or estop any party from subsequently contesting any of the factual assertions for any purpose.

mutually agreeable and as soon as practicable, the Debtor will be available to allow WFF to inspect the property; and (4) no later than January 22, 2010, the Debtor will provide WFF with a term sheet for paying WFF's debt.

4.      The Debtor's right to use Cash Collateral under this Order shall commence on the date of the entry of this Order and expire on the earlier of (A) February 23, 2010 at 5:00 p.m. (New York City Time), or such further date if so extended by written consent of WFF or Court order; or (B) the date of any order terminating the Debtor's use of Cash Collateral (collectively, the "Expiration Date" and, the period delimited thereby, the "Cash Collateral Period"). In no event shall the Debtor be authorized to use Cash Collateral for any purposes or under any terms other than those set forth herein, or as may otherwise be approved by this Court following notice and hearing as may be required; provided, however, that nothing in this Order shall be deemed a waiver of the Debtor's right to seek additional use of Cash Collateral or WFF's right to oppose such request.

5.      The Debtor believes that the payments to JBM and the Condo Association are reasonable, necessary, and foreseeable expenses to be incurred in the ordinary course of business in connection with the operation of the business conducted by the Debtor.

6.      Pursuant to sections 361, 362 and 363(e) of the Bankruptcy Code, as adequate protection for and in the amount of any post-petition diminution in the value of WFF's interests in the Prepetition Collateral, including without limitation such diminution as may be caused by the imposition of the automatic stay of section 362(a) of the Bankruptcy Code and by the Debtor's use of the Prepetition Collateral, and/or the Cash Collateral, WFF is hereby granted a valid, perfected and enforceable security interest in and lien upon (the "Replacement Lien") all of the Debtor's presently owned or hereafter acquired property and assets (collectively, to the

6

extent acquired hereby, the "Postpetition Collateral," and together with the Prepetition Collateral, the "Collateral"), provided however that claims or causes of action arising under sections 544, 547, 548, 549, 550 and 553 of the Bankruptcy Code and the proceeds thereof (the "Avoidance Actions") shall not constitute the Collateral of WFF.

7.    The automatic stay provisions of section 362 of the Bankruptcy Code are hereby modified to permit (a) the Debtor to implement and perform the terms of this Order, and (b) the Debtor to create, and WFF to perfect, the Replacement Lien.  WFF shall not be required to file UCC financing statements or any other instruments with any other filing authority to perfect the Replacement Lien granted by this Order or to take any other actions to perfect such liens, which shall be deemed automatically perfected by the docketing of this Order by the Clerk of the Court. If, however, WFF shall elect for any reason to file, record or serve any such financing statements or other documents with respect to such Liens, then the Debtor shall execute same upon request and the filing, recording or service thereof (as the case may be) shall be deemed to have been made at the time of the commencement of the chapter 11 case on the Petition Date.

8.    In addition to the Replacement Lien, WFF is hereby granted an administrative expense claim under sections 503(b)(1), 507(a) and 507(b) of the Bankruptcy Code (the "Administrative Claim") in the Debtor's case for the amount by which the adequate protection afforded above proves to be inadequate due to any post-petition diminution in value of the Collateral.  Such Administrative Claim shall be allowed and have "superpriority" over all other costs and expenses of the kind specified in or ordered pursuant to sections 105, 326, 330, 331, 503(b), 506(c), 507(a), 507(b) or 726 of the Bankruptcy Code, provided however, the Administrative Claim shall not be satisfied or paid from the Avoidance Actions.

9.    Each of the following shall constitute an "Event of Default" for the purposes of

this Order:

> (a)  The Debtor's chapter 11 cases is dismissed or converted to a case under chapter 7 of the Bankruptcy Code;
>
> (b)  A chapter 11 trustee or examiner with expanded powers is appointed in the Debtor's chapter 11 case;
>
> (c)  The Debtor ceases operations of its present business or takes any material action for the purpose of effecting the foregoing without the prior written consent of WFF, except to the extent contemplated by the Budget;
>
> (d)  The Debtor expends any material funds or monies for any purpose other than those set forth in the Budget or as otherwise approved by the Court;
>
> (e)  The Debtor fails to comply with any of the terms, provisions and conditions of this Order;
>
> (f)  The Debtor expend Cash Collateral for any line item in the Budget in an amount cumulatively in excess of ten (10) percent over the amount provided for such line item;
>
> (g)  Except as otherwise may be permitted under this Order, without prior written consent of WFF or authorization from the Court, the Debtor transfers Collateral or Cash Collateral to any non-Debtor;

10.    Any non-compliance or default with any term of this Order shall be deemed an Event of Default five (5) business days from the earlier of (i) the date the Debtor has knowledge of such non-compliance or default and (ii) the date that WFF delivers by hand, or federal express written notice of such non-compliance or default to the Debtor's proposed counsel, at the following address: Porzio Bromberg & Newman, P.C., Attn: John S. Mairo, 100 Southgate Parkway, Morristown, New Jersey 07962, provided, that such non-compliance or default is not cured by the Debtor within such five (5) business day period.

11.    Upon the occurrence of any Event of Default, WFF may move this Court, on ten (10) days' notice to the Debtor, to terminate the Debtor's use of Cash Collateral.  Notice of any such request by WFF to terminate the Debtor's use of Cash Collateral shall also be provided by WFF to the United States Trustee.

1333801

12.     Notwithstanding anything herein to the contrary, the Debtor and the shall be entitled to investigate the WFF Claims and Defenses until February 12, 2010 (the "Investigation Termination Date"). If the determines that there may be a challenge to WFF's prepetition liens, claims, security interests or the obligations arising under the Loan Documents, upon five (5) business days' written notice to the other, the Debtor shall be permitted to file and prosecute an objection or claim related thereto, and shall have only until twenty (20) days after the applicable Investigation Termination Date (the "Claim Termination Date") to file such objection or otherwise initiate an appropriate action or adversary proceeding on behalf of the Debtor's estate. If such action is not filed by the Debtor on or before the Claim Termination Date (or such other later date as extended by written consent of WFF), the consideration and adequate protection granted in this Order shall be irrevocably binding on the Debtor and all parties in interest without further action by any party or this Court. Unless WFF consents in writing to an extension, the Investigation Termination Date and Claim Termination Date may not be extended with respect to the Debtor, unless cause therefore is shown and only after notice to WFF and the filing of a motion and scheduling of a hearing date before the expiration of the Investigation Termination Date or Claim Termination Date.

13.     **No expenses of administration of the Debtor's estate shall be charged pursuant to section 506(c) of the Bankruptcy Code against the Collateral provided, that the Debtor reserves the right to argue that if the Court determines there is an equity cushion, then the Debtor, pursuant to Court order or consent of WFF, may be permitted to use the Collateral for expenses of administration; further provided, WFF reserves its right to argue that the Debtor is not permitted to charge the Collateral pursuant to section 506(c) of the Bankruptcy Code even if there a determination that there is an equity cushion.** Nothing

contained in this Order shall be deemed to be consent by WFF, whether express or implied, to any claims against the Collateral under section 506(c) of the Bankruptcy Code or otherwise.

14.     This Order shall be binding upon and inure to the benefit of WFF, the Debtor and its respective successors and assigns, including, without any limitation, any trustee, responsible officer, examiner, estate administrator or representative, or similar person appointed in a case for the debtor under any chapter of the Bankruptcy Code.

15.     The terms and conditions of this Order shall be (i) effective and immediately enforceable upon its entry by the Clerk of the Court notwithstanding any potential application of Bankruptcy Rules 6004(g), 7062, 9014 or otherwise; and (ii) not be stayed absent (a) an application by a party in interest for such stay in conformance with Bankruptcy Rule 8005, and (b) a hearing upon notice to the Notice Parties and the Debtor's proposed counsel.

16.     The provisions of this Order, and any actions taken pursuant hereto shall (a) survive entry of any orders which may be entered converting the chapter 11 case to a case under chapter 7 of the Bankruptcy Code or the appointment of a chapter 11 trustee, subject to the provisions of the Bankruptcy Code; (b) be valid and binding on all parties in interest, including, without limitation, WFF, an official committee of unsecured creditors, a chapter 11 trustee, an examiner or a chapter 7 trustee; and (c) continue, notwithstanding any dismissal of any of the Debtor's bankruptcy case (and any such order of dismissal shall so provide), and such claims and Liens shall maintain their priority as provided by this Order until the Obligations are satisfied in full, provided however, nothing contained in this paragraph is intended to nor shall it be deemed to limit any and all rights of WFF under applicable provisions of the Bankruptcy Code.

17.     Nothing herein is intended to nor shall it impair, or otherwise constitute the waiver by any party, of any and all rights to object to any request by the Debtor for authorization

10

1333801

to use Cash Collateral for any period subsequent to the Second Interim Period, on any and all grounds.

18.    To the extent that any of the provisions of this Order shall conflict with any of the provisions of the Loan Documents, this Order is deemed to control and shall supersede the conflicting provision(s) in said agreements.

19.    The provisions of this Order shall remain in full force and effect unless modified or vacated by subsequent order of this Court with the consent of WFF.    The Debtor is directed to serve a copy of this Interim Order on the Office of the United States Trustee, counsel for WFF, and all parties filing a notice of appearance, by facsimile, e-mail or regular mail, on or before January 15, 2010. The Debtor shall serve the proposed Final Order on the same parties, by February 15, 2010.

20.    A final hearing on the Debtor's use of Cash Collateral shall be heard before this Court on February 23, 2010 at 11:00 a.m. in Courtroom 3585, United States Bankruptcy Court, 271 Cadman Plaza East, Brooklyn, New York 11201 (the "<u>Final Hearing</u>"). Opposition, if any, to the proposed Final Order shall be served upon the Notice Parties, the Debtor's proposed counsel and on all parties appearing in this case, the Office of the United States Trustee, and the Clerk of this Court (marked "<u>Chambers Copy</u>") as well as filed on the Court's electronic Docket, on or before February 19, 2010.



**Dated: Brooklyn, New York**
**January 13, 2010**

_____
**Elizabeth S. Stong**
**United States Bankruptcy Judge**

1333801

The undersigned consents to
the form and entry of this Order


Dated: January 8, 2010                    **MORITT HOCK HAMROFF & HOROWITZ LLP**
                                          400 Garden City Plaza
                                          Garden City, NY 11530
                                          Telephone (516) 873-2000
                                          Leslie A. Berkoff, Esq.
                                          Email: lberkoff@moritthock.com

                                                    -   and  -

                                          **PORZIO, BROMBERG & NEWMAN, P.C.**


                                          By: /s/ John S. Mairo
                                                  John S. Mairo
                                          (Mail to) P.O. Box 1997, Morristown, NJ 07962-1997
                                          (Delivery to) 100 Southgate Parkway, Morristown, NJ 07960
                                          Telephone (973) 538-4006
                                          Email: jsmairo@pbnlaw.com
                                          Proposed Attorneys for Debtor and Debtor-in-Possession


Dated: January 8, 2010                    **HERRICK, FEINSTEIN LLP**


                                          By: /s/ Andrew C. Gold
                                                  Andrew C. Gold
                                                  Hanh V. Huynh
                                          2 Park Avenue
                                          New York, NY 10016
                                          Telephone (212) 592-1400
                                          Email: agold@herrick.com
                                          Email: hyuynh@herrick.com
                                          Attorneys for W. Financial Fund, L.P.