**PORZIO, BROMBERG & NEWMAN, P.C.**
100 Southgate Parkway
Morristown, NJ 07960
Attorneys Appearing
John S. Mairo, Esq.
jsmairo@pbnlaw.com
Robert M. Schechter, Esq.
rmschechter@pbnlaw.com

Attorneys for the Debtor and Debtor-in-Possession

**UNITED STATE BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>20 BAYARD VIEWS, LLC,<br><br>　　　　Debtor. | Case No. 09-50723 (ESS)<br><br>Hon. Elizabeth S. Stong<br><br>Chapter 11 |

**MOTION BY 20 BAYARD VIEWS, LLC: (1) OBJECTING TO AND REQUESTING REDUCTION OF W FINANCIAL FUND, LP'S PROOF OF CLAIM; AND (2) SEEKING TO REQUIRE W. FINANCIAL FUND, LP TO DETAIL ITS FEES/COSTS/CHARGES AND ESCROW FUND**

[*Relates to Claim No. 11*]

20 Bayard Views, LLC (the "Debtor"), by its counsel Porzio, Bromberg & Newman, P.C., submits this motion (the "Motion"): (1) objecting to and requesting reduction of the proof of claim (the "Proof of Claim" or "Claim") filed by W Financial Fund, LP ("WFF") as it incorrectly calculates its Pendency Interest (defined below) based upon a default interest rate of 24% (the "24% Default Rate"); and (2) seeking to require WFF to detail its fees, costs and charges to date, plus any monies held in WFF's escrow fund.

1360084

**PRELIMINARY STATEMENT**

1.  In its Claim, WFF asserts it is owed "in the aggregate amount of not less than $18,163,756.85 as of March 23, 2010" plus fees and costs thereon.[1] The Claim includes principal in the amount of $16,975,072.00, pre-petition interest at the contract rate of 12% totaling $186,725.79 for the time period of November 1, 2009 to December 3, 2009, plus default interest of 24% (starting on the Debtor's bankruptcy filing date) of $1,244,838.50 for the time period from the Petition Date (December 4, 2009) through March 23, 2010. This Motion objects to and seeks reduction of the Claim by the amount of default interest WFF alleges to be owed for the time period of the Petition Date through March 23, 2010 and thereafter up to the effective date of the Debtor's plan of reorganization (the "Pendency Interest"). WFF's use of an exorbitant 24% Default Rate for calculating its Pendency Interest is not supported by the facts of the case or applicable law.

2.  Additionally, the Claim does not itemize or detail WFF's legal fees, or any other fees, costs and charges which WFF seems to be reserving its right to assert under Section 506(b) of the Bankruptcy Code.[2] The Debtor respectfully requests that the Court require WFF to detail its fees/costs/charges and escrowed funds so that the Debtor has the benefit of that information prior to confirmation.

---

[1] Annexed hereto as **Attachment 1** is WFF's Proof of Claim.

[2] Section 506(b) provides in pertinent part: "To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose." 11 U.S.C. § 506(b).

## JURISDICTION

3. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The statutory predicates for the relief requested herein are 11 U.S.C. §§ 105(a), 502 and 506(b). Additionally, Rule 3007 of the Federal Rules of Bankruptcy Procedure and Rule 3007-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Eastern District of New York govern the procedure.

## BACKGROUND

5. On December 4, 2009 (the "Petition Date"), the Debtor, as debtor and debtor-in-possession, filed a voluntary petition for reorganization under chapter 11 of the Bankruptcy Code. The Debtor continues in the management and operation of its business and property as debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee, examiner or official committee of unsecured creditors has been appointed to date.

6. The Debtor was formed in 2005 for the purpose of acquiring and developing certain real property located at 20 Bayard Street, Brooklyn, New York (the "Property"). The development of the Property was financed by Fremont General, which was later acquired by iStar Loans, LLC.

7. In October 2008, WFF replaced iStar Loans, LLC by virtue of the Agreement of Consolidation, Extension and Modification of Mortgage dated October 14, 2008 (the "WFF Mortgage"). In connection with the WFF Mortgage, the Debtor executed in favor of WFF the Consolidated, Amended and Restated Note dated October 14, 2008 in the principal amount of $17,400,000 (the "WFF Note," together with the WFF Mortgage, the "WFF Loan").

8. The WFF Note provides for the 12% non-default rate of interest (the "12% Contract Rate"), *see* **Attachment 1**, Exhibit B (WFF Note), at 1, and the 24% Default Rate, *see id.*, at 2-3. The WFF Mortgage provides for the creation of an escrow fund as additional security for WFF. *See* **Attachment 1**, Exhibit A (WFF Mortgage), at Section 6.

9. As of the Petition Date, no event of default existed under the WFF Loan.

10. Since the Petition Date, the Debtor has made substantial monthly adequate protection payments to WFF pursuant to consensual cash collateral orders: December 2009 ($62,500.00); January 2010 ($82,743.00); February 2010 ($108,636.00); and March 2010 ($101,951.00).

11. On March 26, 2010, the Debtor filed its Disclosure Statement and Plan. The Plan proposes to pay WFF in full, over time, at an interest rate which will pay WFF the present value of its allowed claim in accordance with the relevant legal authorities.

**RELIEF REQUESTED**

12. The Debtor seeks entry of an order, pursuant to sections 105(a), 502 and 506(b) of the Bankruptcy Code and Bankruptcy Rule 3007 and Local Rule 3007-1, reducing the Proof of Claim insofar as it asserts a right to recover Pendency Interest at the 24% Default Rate. Moreover, the Debtor respectfully requests that the Court require WFF to detail its fees/costs/charges and escrowed funds so that the Debtor has the benefit of that information prior to confirmation.

1360084

**BASIS FOR RELIEF**

I. **WFF's PENDENCY INTEREST SHOULD NOT BE CALCULATED AT THE 24% DEFAULT RATE, BUT INSTEAD SHOULD BE CALCULATED AT NO MORE THAN THE 12% CONTRACT RATE**

   A. Claims Objections: Burden of Proof

   13. The burden of proof for determining the validity of claims rests on different parties at different stages of the objection process. Section 502(a) of the Bankruptcy Code provides that "[a] claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest objects." 11 U.S.C. § 502(a). Although a proof of claim is considered *prima facie* valid if it alleges facts sufficient to support a legal basis for the claim, an objector to such claim can contest and rebut the *prima facie* validity of that claim. *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173 (3d Cir. 1992). Once the validity of a claim is rebutted, "[i]t is ultimately for the claimant to prove his claim, not for the objector to disprove it." *In re Forte*, 234 B.R. 607, 617 (Bankr. E.D.N.Y. 1999) (citations and quotation marks omitted).

   B. Secured Creditor's Three Categories of Interest

   14. The Second Circuit has explained that "[d]irectly, or by implication, the Bankruptcy Code provides for three categories of interest: (1) interest accrued prior to the filing of the bankruptcy petition (prepetition interest); (2) interest accrued after the filing of a petition but prior to the effective date of a reorganized plan (pendency interest); and (3) interest to accrue under the terms of a reorganized plan (plan interest). " *Key Bank Nat'l Ass'n v. Milham (In re Milham*, 141 F.3d 420, 422-23 (2d Cir. 1988). As noted earlier, this Motion is focused on WFF's Pendency Interest, which WFF has calculated at a 24% Default Rate.

C.  **With No Event of Default Occurring Pre-Petition, WFF Has No Authority To Collect Pendency Interest At the 24% Default Rate**

15. In its Proof of Claim, WFF has asserted an entitlement to the 24% Default Rate for calculating its Pendency Interest. Because there was no default pre-petition, the only ground on which WFF appears to assert its right to the 24% Default Rate is the bankruptcy-default clause in the WFF Mortgage. *See* **Attachment** 1, Exhibit A (WFF Mortgage), at Section 21(g). Indeed, in the Claim, WFF asserts its entitlement to the 12% Contract Rate up to the day of the Debtor's bankruptcy filing, and then on the Petition Date, WFF asserts an entitlement to its 24% Default Rate. *See* **Attachment 1**, Rider to Proof of Claim, at Section 3.

16. This reliance, however, is fatally flawed, for a default by the Debtor, if at all, is based on an unenforceable *ipso facto* clause.

17. As a matter of law, the bankruptcy filing *per se* is not a permissible basis for invoking the contract default interest rate. Section 365(e)(1) of the Bankruptcy Code prohibits enforcement of *ipso facto* clauses in contracts.[3] The bankruptcy courts for the Eastern District of New York have agreed, stating that the Bankruptcy Code "evinces a strong predeliction [sic] against the enforcement of *ipso facto* contract clauses which place the debtor in default due to its bankruptcy filing. . . . Consequently, this court cannot render a decision which deems a debtor to be in default of its contract obligations because of its bankruptcy filing." *In re Island Helicopter Corp.*, 63 B.R. 809, 818 (Bankr. E.D.N.Y. 1986). In fact, less than one year ago, the Honorable Dennis E. Milton, U.S.B.J., was presented with a case on similar facts as the instant case, and

---

[3] Section 365(e)(1) provides: "Notwithstanding a provision in an executory contract or unexpired lease, or in applicable law, an executory contract or unexpired lease of the debtor may not be terminated or modified, and any right or obligation under such contract or lease may not be terminated or modified, at any time after the commencement of the case solely because of a provision in such contract or lease that is conditioned on –
    (A) the insolvency or financial condition of the debtor at any time before the closing of the case;
    (B) the commencement of a case under this title; or
    (C) the appointment of or taking possession by a trustee in a case under this title or a custodian before such commencement."
11 U.S.C. § 365(e)(1).

held that the bankruptcy-default clause was no basis to calculate pendency interest at a default rate of interest. *In re Bownetree, LLC*, 2009 Bankr. LEXIS 2295 (Bankr. E.D.N.Y. July 24, 2009).

18. In *Bownetree*, the debtor received a loan from Kennedy Funding ("Kennedy"). The underlying loan documents dictated both a contractual rate of interest and, in the event of a default, a default rate of interest. *Id*. at *3-4. At the loan closing, about two thirds of the loan was disbursed, with the remaining portion reserved as "holdbacks," which Kennedy intended to provide to the debtor in the future. *Id*. at *2. Notably, the holdbacks were never distributed. *Id*. at *2, 9.

19. The loan agreement enumerated various events of default, one of which was premised on if the debtor filed for bankruptcy relief.[4] *Id*. at *3. In September 2008, the debtor filed its bankruptcy petition. At that moment, there was no event of default. *Id*. at *3. Also, the debtor's chapter 11 reorganization plan proposed to pay Kennedy's claim in full. But because the payments did not apply the default rate of interest to Kennedy's underlying claim, Kennedy objected to the plan. *Id*. at *5. Kennedy argued that the debtor's bankruptcy filing constituted an event of default, which triggered the default rate of interest. *Id*. The debtor contested this claim. *Id*.

20. Judge Milton ruled in favor of the debtor and imposed the 12% non-default contract rate for calculating the pendency interest, not the 25% default rate sought by Kennedy. First, Judge Milton held that the debtor's filing *did not* trigger the "implementation of the default rate of interest," and he agreed with the debtor that the bankruptcy-default clause was unenforceable as an *ipso facto* clause under Section 365(e). *Id*. at *6, 9. Judge Milton remarked,

---

[4] The language in the bankruptcy-default clause in *Bownetree* is worded similarly to the WFF Mortgage.

1360084

"[t]he debtor's filing of bankruptcy cannot be used to accelerate the loan and trigger the default rate of interest . . . ." *Id*. at *9.

21. Second, Judge Milton held that the exception to the *ipso facto* doctrine under Section 365(e)(2) did not apply. Kennedy had argued that the "holdback" provision in the loan documents made this exception applicable because the contract provided for "financial accommodations." *Id.* at *9 (quoting 11 U.S.C. § 365(e)(2)).[5] In rejecting this argument, Judge Milton reasoned that since the holdbacks were never lent to the debtor, nor would they be advanced in the future, the loan did not provide for "financial accommodations." *Id.* Moreover, because the debtor's plan provided that Kennedy's claim be paid in full, Kennedy was not advancing additional funding to the debtor. Accordingly, the exception in Section 365(e)(2) was inapplicable, and the non-default rate of interest applied. *Id*.

22. The *Bownetree* case is almost on all fours with the case at bar. Here, most importantly, no event of default occurred or was called or noticed pre-petition. This point alone is sufficient to conclude that WFF is not entitled to the 24% Default Rate. Next, the bankruptcy-default clause cannot be used to trigger an event of default, for such clause is invalid under the Bankruptcy Code. Further, the WFF Loan was dispersed to the Debtor with no "holdbacks" or reserves; WFF did not contract "to extend other debt financing or financial accommodations"; and the Debtor's proposed reorganization Plan intends to pay WFF the allowed amount of its claim in full. Accordingly, pursuant to section 365(e), WFF's bankruptcy-default clause is

---

[5] Section 365(e)(2) provides in pertinent part:
> Paragraph (1) of this subsection [the *ipso facto* doctrine] does not apply to an exectory contract or unexpired lease of the debtor, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties, if --
> \* \* \*
> (B) Such contract is a contract to make a loan, or extend other debt financing or financial accommodations, to or for the benefit of the debtor, or to issue a security of debtor.

11 U.S.C. § 365(e)(2)(B).

unenforceable as an *ipso facto* clause and WFF has no entitlement to interest at the 24% Default Rate.

23. Moreover, the 24% Default Rate is exorbitant and allowing such a rate for Pendency Interest would be inequitable. *See Milham*, 141 F.3d at 423 (noting that "Section 506(b) does not say that the oversecured creditor collects pendency interest at the contractual rate"; thus, "appropriate rate of pendency interest is . . . within the limited discretion of the court"); *Bownetree*, 2009 Bankr. LEXIS 2295, at *10 ("courts have found that the granting of interest under Section 506(b) is not dictated by the loan agreement") (*citing United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 239-240 (1989)). Indeed, in *Bownetree*, Judge Milton found the proposed default rate "inequitable" because, in part, the "difference between the default rate and non-default rate is significant and unexplained." *Id*. at *11. Similarly, the difference between WFF's 12% Contract Rate and 24% Default Rate is significant, *i.e.*, 12%. Indeed, the 12% differential is nearly four (4) times the United States Prime Rate of 3.25%.[6] Furthermore, WFF has not and cannot provide a sound justification for why it should receive the 24% Default Rate for its Pendency Interest when (a) there was a no pre-petition default, (b) the Debtor has made substantial adequate protection payments each month of this bankruptcy case, and (c) WFF's reasonable legal costs for monitoring this bankruptcy case are already recoverable under Section 506(b).

D. <u>Contractual Rate of Interest for Pendency Interest</u>

24. In *Ron Pair*, the Supreme Court linguistically dissected section 506(b) of the Bankruptcy Code. *United States v. Ron Pair*, 489 U.S. at 241. The result of its analysis produced the holding that oversecured, nonconsensual lienholders are entitled to post-petition

---

[6] Source: Wall Street Journal website on April 15, 2010 [www.wsjprimerate.us].

1360084

interest under section 506(b). *Id.* at 240-42. What the Supreme Court did not decide, however, was what the appropriate rate of pendency interest should be under Section 506(b).

25. Since the *Ron Pair* decision, most courts have held that the contract rate applies to the calculation of interest under Section 506(b). *See Milham*, 141 F.3d at 423 ("Most courts have awarded pendency interest at the contractual rate; but nevertheless, however widespread this practice may be, it does not reflect an entitlement to interest at the contractual rate"). Thus, the presumption appears to be that bankruptcy courts apply the rate of interest in effect pursuant to the contract on the petition date and this presumption can be rebutted based on the equities of the case.[7]

26. Here, on the Petition Date, the rate of interest in effect pursuant to the WFF Loan was the 12% Contract Rate. While the Debtor could easily make equitable arguments to lower that rate (which is far in excess of market), the Debtor is willing to attempt to limit its legal battles by having WFF's Pendency Interest calculated at the 12% Contract Rate through the effective date of its Plan.[8]

---

[7] There are some decisions which have noted a presumption in favor of the contract default rate, however, those cases should be interpreted as giving a presumption in favor of the contract rate at the time of the bankruptcy filing; thus, if there were long standing defaults in place at the time of the bankruptcy filing, then the presumption is in favor of the default rate. *See, e.g. In re Vanderveer Estates Holdings, Inc.,* 283 B.R. 122, 125, 134 (Bank. E.D.N.Y. 2002) (noting presumption is in favor of default rate but two months <u>before</u> the bankruptcy filing (i) debtor had defaulted on the loan, (ii) lender had accelerated the loan, and (iii) lender had imposed the default rate of interest).

[8] The 12% Contract Rate is extremely high in relation to the current U.S. Prime Rate and the market, and essentially precipitated the Debtor's bankruptcy filing: despite excellent cash flow, the Debtor could not survive with WFF's prepetition monthly interest payment of nearly $170,000.00. Upon the effective date of the Debtor's Plan, WFF's allowed secured claim will be paid in full, over time, at an interest rate providing WFF with the present value of its allowed claim in accordance with the relevant legal authorities. As will be established at the Plan confirmation hearing, the appropriate interest rate for paying off WFF's allowed claim will be close to the U.S. Prime Rate of 3.25%.

## II. WFF SHOULD BE DIRECTED TO DETAIL ITS FEES, COSTS AND CHARGES, PLUS ANY MONEY HELD IN ESCROW

27. In WFF's Proof of Claim, WFF asserted that its Claim includes "legal fees, and post-petition interest, costs and fees allowable under section 506(b) of the Bankruptcy Code." *See* **Attachment** 1, Rider to WFF's Proof of Claim, at Section 3. So that the Debtor has the benefit of that information prior to confirmation, the Debtor requests that the Court require WFF to detail its fees/costs/charges. The Debtor reserves all rights to object to such fees/costs/charges.

28. Additionally, as noted earlier, the WFF Mortgage included a provision for escrowed funds. Similar to its request for WFF's fees/costs/charges, the Debtor requests that the Court direct WFF to disclose if it is holding any escrowed funds under the WFF Loan.

## RESERVATION OF RIGHTS

29. The Debtor expressly reserves the right to amend, modify or supplement this Motion and to file additional objections to the Proof of Claim objected to herein, or any other claims (filed or not) that may be asserted against the Debtor. Should one or more of the grounds of objection stated in this Motion be dismissed, the Debtor reserves its rights to object on other stated grounds or on any other grounds that the Debtor discovers during the pendency of this bankruptcy case. In addition, the Debtor reserves the right to seek further reduction of this Claim or any claim for any reason including to the extent that such claim has been paid.

## NOTICE

30. Notice of this Motion has been provided to the following parties: (a) the Office of the United States Trustee; (b) counsel to WFF [which is the party listed in the Claim for which notices should be sent]; and (c) all parties requesting notice through the Court's electronic filing

1360084

system. In light of the nature of the relief requested, the Debtor respectfully submits that no further notice is necessary.

**WHEREFORE**, the Debtor seeks entry of an order, pursuant to sections 105(a), 502 and 506(b) of the Bankruptcy Code and Bankruptcy Rule 3007 and Local Rule 3007-1, disallowing the Proof of Claim insofar as it asserts a right to recovery of Pendency Interest calculated at the 24% Default Rate. The Debtor further respectfully requests the Court to direct WFF to detail its fees/costs/charges and escrowed funds, and award the Debtor such other relief as is just and equitable.

Dated: April 19, 2010	**PORZIO, BROMBERG & NEWMAN, P.C.**

By: /s/ John S. Mairo
John S. Mairo (JM–0670)

Attorneys for the Debtor and Debtor-in-Possession